UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LENITA B.,

              Plaintiff,                    **DECISION AND ORDER**

    v.

                                               1:18-CV-6656-EAW

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

# INTRODUCTION

Represented by counsel, Plaintiff Lenita B. ("Plaintiff") brings this action on behalf of Timothy M.[1] ("Claimant") pursuant to Title II and Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying Claimant's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 13; Dkt. 20). For the reasons discussed below, the Commissioner's motion (Dkt. 20) is granted and Plaintiff's motion (Dkt. 13) is denied.

---

[1] On July 23, 2021, the Court granted Plaintiff's consent motion to substitute Plaintiff for the Claimant. (Dkt. 42).

**BACKGROUND**

Claimant protectively filed his applications for DIB and SSI on August 25, 2014. (Dkt. 8 at 256-63).[2] In his applications, Claimant alleged disability beginning March 1, 2014. (*Id.*). Claimant's applications were initially denied on January 2, 2015. (*Id.* at 117-24). At Claimant's request, a hearing was held before administrative law judge ("ALJ") Kenneth Theurer on June 30, 2017. (*Id.* at 85-116). On August 16, 2017, the ALJ issued an unfavorable decision. (*Id.* at 39-53). Claimant requested Appeals Council review; his request was denied on July 19, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 1-5).

**LEGAL STANDARD**

**I.     District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[2]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b).[3] If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

---

[3]  Because the DIB and SSI regulations mirror each other, the Court only cites the SSI regulations. *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *Id*. § 416.920(e). The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Claimant was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. The ALJ determined that Claimant met the insured status requirement of the Act through March 31, 2018. (Dkt. 8 at 42). At

step one, the ALJ determined that Claimant had not engaged in substantial gainful work activity since March 1, 2014, the alleged onset date. (*Id*. at 42).

At step two, the ALJ found that Claimant suffered from several severe impairments: post-surgery gunshot wound to abdomen, depression, substance abuse, and post-traumatic stress disorder (PTSD). (*Id.*). The ALJ also found that Claimant's fractured jaw, eye irritation, pink eye, and epididymitis of one testicle were not severe impairments. (*Id*. at 43).

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 43-45).

Before proceeding to step four, the ALJ concluded that Claimant retained the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He is able to lift and carry 20 pounds occasionally and ten pounds frequently, sit for six hours, stand and/or walk for six hours with normal breaks, occasionally climb ramps, stairs, ladders, or scaffolds, balance, stoop, kneel, crouch, and crawl. He retains the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, relate to and interact with others to the extent necessary to carry out simple tasks but should avoid work requiring more complex interactions or joint efforts with other coworkers to achieve work goals. He should have no more than occasional and brief interaction with the public. He is able to handle reasonable levels of simple work related stress in that he can make decisions directly related to

the performance of simple work and handle usual work place changes and interactions associated with simple work.

(*Id*. at 45). At step four, the ALJ found that Claimant was unable to perform any past relevant work. (*Id.* at 51).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Claimant's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Claimant could perform, including the occupations of mail clerk, photocopy machine operator, and housekeeping cleaner. (*Id.* at 52). Accordingly, the ALJ found that Claimant was not disabled as defined in the Act. (*Id.* at 52-53).

**II.    The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error**

Plaintiff's arguments question the ALJ's evaluation of the opinions of Dr. Myers, Claimant's treating physician, and the ALJ's formulation of Claimant's RFC, which, she argues, was based on the ALJ's lay opinion and not supported by substantial evidence. (Dkt. 13-1 at 11-18). For the reasons that follow, the Court finds Plaintiff's arguments to be without merit.

Because Claimant's claims were filed before March 27, 2017, the ALJ was required to apply the treating physician rule, pursuant to which the opinion of a treating source should be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). The rule provides

that if the ALJ declines to afford controlling weight to a treating physician's opinion, he then must consider various factors to determine how much weight to give to the opinion. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). These factors, also known as *Burgess* factors, include the frequency, length, nature, and extent of treatment; the amount of medical evidence supporting the opinion; the consistency of the opinion with the remaining medical evidence; and whether the physician is a specialist. *Id.*; *see also Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). An ALJ's failure to explicitly apply the factors when assigning less than controlling weight to an opinion of a treating physician generally constitutes an error requiring remand, *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999), unless a searching review of the record demonstrates that the ALJ has provided "good reasons" for his weight assessment. *See, e.g.*, *Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) (summary order) (the ALJ provided sufficient reasons for the weight assigned to the treating physician opinion even when he did not explicitly consider the *Burgess* factors); *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (an ALJ's failure to explicitly apply the *Burgess* factors when assigning weight to opinion evidence constitutes harmless error if "a searching review of the record" confirms "that the substance of the treating physician rule was not traversed." (quotations omitted)).

Here, when arriving at Claimant's RFC, the ALJ evaluated several medical opinions contained in the record. (Dkt. 8 at 48-51). One such opinion was the June 2017 medical assessment submitted by Dr. Myers, Claimant's primary treating physician. (*Id.* at 49). The ALJ afforded the opinion "no weight" because it was inconsistent with Dr. Myers's contemporaneous treatment notes and the findings made by Claimant's other medical

providers. Plaintiff argues that the ALJ's evaluation of the opinion was inadequate (Dkt. 13-1 at 15), but the Court does not find Plaintiff's argument persuasive for several reasons.

First, even though the ALJ did not explicitly identify each factor of the treating physician rule in his opinion, the ALJ's reasons for assigning Dr. Myers's opinion no weight were clear and substantiated by the record. *See Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear."). Second, the Court finds that the ALJ sufficiently articulated his reasons for the weight he assigned to Dr. Myers's 2017 opinion because he considered Dr. Myers's treating relationship with Claimant and discussed the inconsistency of his opinion with his treatment records and the findings of several other treatment providers—two factors that the regulations specifically instruct the ALJ to consider when weighing a treating physician's opinion. (Dkt. 8 at 49). Because it is the ALJ who is tasked with evaluating medical evidence, he is free to assign less than controlling weight to the opinion of a treating physician where, as here, the opinion is not supported by the record. *See Halloran*, 362 F.3d at 32. Accordingly, the Court finds no reversible error in the ALJ's consideration of the applicable factors in evaluating Dr. Myers's opinion. *Holler v. Saul*, 852 F. App'x 584, 2021 WL 1621304, at *2 (2d Cir. 2021) (summary order) ("[W]here . . . the ALJ provided a detailed explanation for her decision to give less than controlling weight to a treating physician's opinions, which we can easily understand from a review of the [record], the ALJ's failure to explicitly discuss each of the four factors . . . is not *per se* reversible error.").

The Court finds that the ALJ afforded proper weight to the opinion of Dr. Myers because the limitations identified in the opinion were, indeed, inconsistent with the record of Dr. Myers's examinations, as well as the other opinion evidence contained in the record. *See Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) (summary order) (no error in declining to afford controlling weight to the opinion of plaintiff's treating physician because it was inconsistent with his treatment notes and diagnostic observations, the other medical opinion evidence, and plaintiff's reported activities of daily living). The Court also finds that while the record of Claimant's injuries sustained as a result of a gunshot wound and the diagnosis provided by Dr. Myers were consistent throughout his treatment, the severity of Claimant's limitations identified in his opinion was neither supported by Dr. Myers's own treatment records nor by the other medical evidence contained in the record.

Specifically, in his opinion, Dr. Myers indicated that Claimant was unable to work on a regular and continuous basis due to PTSD, depression, and abdominal pain developed as a result of a gunshot wound he sustained in 2014. (Dkt. 8 at 798-99). Dr. Myers opined that Claimant was able to sit for four hours, stand for less than two hours, and lift/carry no more than an occasional ten pounds, and that Claimant would require multiple unscheduled breaks during the workday, be off task for 30% of the time, and absent for more than four days per month due to his impairments. (*Id.*). However, these findings were not supported by the record, which demonstrates that Dr. Myers started treating Claimant sometime around July 2014 shortly after he sustained serious injuries as a result of a gunshot wound in the abdomen that included a loss of spleen, appendix, part of small bowel, and

gallbladder, injured pancreas, an open gastric injury, acute respiratory failure, fractured ribs, and ileostomy.[4]  (*Id.* at 548-49, 577-91).  Even though Dr. Myers routinely noted Claimant's complaints of vague abdominal pain and PTSD, his course of treatment of both conditions was rather conservative and consisted of pain[5] and acid reflux medications, as well as referral to counseling to treat Claimant's PTSD.  (*Id.* at 549-50, 603, 609); *see Thomas v. Comm'r of Soc. Sec. Admin.,* No. 19 Civ. 1177 (GWG), 2020 WL 4757059, at *14 (S.D.N.Y. Aug. 18, 2020) ("[C]ourts have found substantial evidence to support an ALJ's decision to discount an opinion where the opinion was 'not supported by the . . . treatment progress notes[,] which show that the claimant's condition was stable from conservative treatment with medication and therapy.'" (internal citations omitted)).

Even when Claimant complained about having abdominal pain, particularly throughout 2014 and 2015, Dr. Myers indicated that Claimant had minimal residual pain and was "recovering nicely from his gunshot wound." (*Id.* at 540, 549, 603, 609, 669).  In December 2014, Claimant successfully underwent a colostomy closure procedure performed by surgeon Dr. Valerie Dunn (*id.* at 577-91), and, despite having complaints about mild abdominal pain, was improving from the surgery (*id.* at 655-56).  During treatment, Dr. Myers routinely ordered bloodwork and ultrasound, neither of which

---

[4]     Ileostomy is a surgical procedure used to move waste out of the body when a part of the small intestine is brought to the surface of the skin through an opening in the abdominal wall to form a stoma.  *See Ileostomy*, MEDLINEPLUS, U. S. NATIONAL LIBRARY OF MEDICINE, https://medlineplus.gov/ency/article/007378.htm (last visited Aug. 2, 2021).

[5]     While pain medications were a part of Claimant's recovery, the record reveals Dr. Myers's concerns over Claimant's dependency to narcotic medications during his treatment and his attempts to wean Claimant off of them.  (*Id.* at 609).

revealed any abnormalities. (*Id*. at 603, 609, 653-56). In December 2016, Dr. Myers opined that there was no evidence of any abnormalities in Claimant's abdomen other than scar tissue adhesions that caused him "some continued discomfort." (*Id*. at 769). Notably, some of Claimant's symptoms of generalized abdominal pain were associated with salmonella poisoning after a trip to the Caribbean or a stomach flu. (*Id*. at 790-91). Even then, Claimant's blood test was unremarkable, and a CT scan of his abdomen and pelvis was negative for abnormalities. (*Id*. at 737).

While most of Claimant's symptoms related to his abdominal pain and PTSD, the record also demonstrates Claimant's complaints of generalized pain, particularly back pain. (*Id*. at 603, 609, 637, 645, 654, 668, 673, 681-82, 716, 740). However, such complaints were sporadic, did not require any substantial treatment, and did not provide the basis for the substantial limitations in Claimant's functioning that Dr. Myers opined to in his 2017 opinion. In fact, Dr. Myers routinely observed Claimant's nonremarkable upper and lower extremities, and normal range of motion in his neck, shoulders, hips, knees, and lumbar back with only some tenderness over his lumbar area. (*Id*. at 669, 741, 770-71). The only physical limitation that Dr. Myers ever identified during treatment that related to Claimant's repetitive lifting, bending, and pushing appear to have referenced Dr. Dunn's post-operative notes made shortly after Claimant's ileostomy removal surgery, and not as a result of Dr. Myers's own examination of Claimant.[6] (*Id*. at 682).

---

[6]   Plaintiff argues that the note containing these limitations was a medical opinion of Dr. Myers the ALJ failed to either mention or evaluate in his opinion. (Dkt. 13-1 at 13-14). The Court disagrees because the ALJ clearly analyzed this treatment record in his decision when he discussed Dr. Dunn's ileostomy removal surgery and the limitations

The limitations identified by Dr. Myers were also not supported by the findings of consultative examiner Dr. Figueroa made in 2014 and 2017, which the ALJ properly afforded great weight. (*Id*. at 448-49). *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) ("It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence, . . . and the report of a consultative physician may constitute such evidence." (internal citations omitted)). During each examination, Dr. Figueroa noted that Claimant's abdomen was soft, without masses, or abdominal bruits, his bowels sounded normal, he had full flexion and extension of his cervical and lumbar spines, negative single leg raises, full range of motion in his shoulder, elbows, hips, knees, stable and nontender joints, and full strength in his upper and lower extremities. (*Id*. at 575, 636). Consistent with her observations made during each examination, Dr. Figueroa opined that Claimant did not have any physical limitations for walking, standing, bending, lifting, carrying, pushing, and pulling. (*Id*. at 575-76, 637). She determined that he was able to lift and carry up to 100 pounds, sit, stand, and walk for up to eight hours, continuously reach, handle, finger, push, pull, climb, balance, stoop, kneel, crouch, crawl, and be exposed to unprotected heights and various environmental factors. (*Id*. at 638-43).

---

imposed on Claimant following the surgery. (Dkt. 8 at 49). Additionally, this treatment record does not constitute an opinion of Dr. Myers that the ALJ ought to consider as it appears to reference limitations identified by Dr. Dunn—the only treating source in the record who imposed a 10-pound lifting restriction on Claimant. (*Id*. at 682 ("He will go back to work on her lifting restrictions of no greater than 10 pounds.")); *see also* 20 C.F.R. § 416.927 (a)(1). Notably, the ALJ properly evaluated this opinion of Dr. Dunn when he afforded it "no weight" because it contained restrictions that were temporary in nature made shortly after Claimant's ileostomy removal surgery. (*Id*. at 49).

As for Claimant's mental limitations identified by Dr. Myers, they too do not find support in either his own treatment notes or in the medical record. In fact, Dr. Myers routinely observed Claimant's non-remarkable mental health symptoms and noted that he appeared alert, not in distress, with normal mood, affect, judgment, and thought content during treatment. (*Id*. at 669, 682, 716, 734-35, 737, 740-41). Even though Claimant admitted being depressed, he indicated that his nightmares were not specifically related to the gunshot wound he sustained, and, instead, related to violence around him in general. (*Id*. at 567-68, 771). Notably, even though Dr. Myers routinely prescribed medication and continuously referred Claimant to counseling to help him deal with post-traumatic symptoms associated with his injuries (*id*. at 543, 550, 567-68, 682, 719, 771), Claimant ceased medication at least on one occasion, and did not engage in counseling until 2017 (*id*. at 540, 756-57). *See Diaz-Sanchez v. Berryhill*, 295 F. Supp. 3d 302, 306 (W.D.N.Y. 2018) ("Where, as here, a claimant has sought little-to-no treatment for an allegedly disabling condition, his inaction may appropriately be construed as evidence that the condition did not pose serious limitations.").

Plaintiff takes issue with the ALJ discounting portions of Dr. Myers's opinion that relate to Claimant's off-task time and absenteeism, arguing that the ALJ was not qualified to make that determination. (Dkt. 13-1 at 16-17). This argument is not persuasive because it is "within the province of the ALJ to resolve" conflicting findings and determine the scope of a plaintiff's RFC. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). The Court further rejects Plaintiff's argument that this case is analogous to *Wilson v. Colvin*, 213 F. Supp. 3d 478 (W.D.N.Y. 2016), wherein another judge in this District found that

the ALJ improperly concluded without explanation that a treating physician's opinion regarding off-task time and absenteeism was based on speculation. *Id*. at 484. While the ALJ in this case did find that Dr. Myers's opinions regarding Claimant's off-task time and absenteeism were "speculative" (Dkt. 8 at 53), he appropriately explained the basis for that conclusion—namely, that there were "no objective findings or diagnostic studies" consistent with the extreme limitations identified by Dr. Myers (*id*.).

Moreover, this is not a case where the ALJ arrived at an RFC without relying on any objective medical evidence, or where he incorporated the limitations that were not supported by the record. Instead, the ALJ here had the benefit of relying on two psychiatric evaluations conducted two years apart by Dr. Kristina Luna,[7] consultative examiner, to formulate Claimant's RFC. Unlike Dr. Myers, Dr. Luna opined that Claimant had no limitations in all aspects of his mental functioning, except for his moderately limited ability to perform complex tasks independently and deal with stress.[8] (*Id*. at 627-28). Consistent with Dr. Luna's findings, the ALJ formulated Claimant's RFC and limited him to simple work with occasional and brief interaction with the public and without complex interactions with coworkers. *See, e.g., Cook v. Comm'r*, 818 F. App'x 108, 109-10 (2d

---

[7] In his decision, the ALJ referred to consultative evaluations conducted by Kristina Luna in December 2014 and Kristina LaBarbera in January 2017. (*Id*. at 50). Because the record suggests that it was the same person, for purposes of clarity, the Court will refer to both evaluations as those performed by Kristina Luna. (*Id*. at 624).

[8] The findings in Dr. Luna's 2014 evaluation were nearly identical to the findings made during her 2017 examination, except that in 2014 she opined that Claimant was mildly, as opposed to moderately, limited in his ability to perform complex tasks independently and deal appropriately with stress. (*Id*. at 571).

Cir. 2020) (summary order) (the ALJ did not err when he limited plaintiff to simple routine work with limitations in interaction with the public based on the consultative opinion that he could perform simple tasks independently and relate adequately with others); *Whipple v. Astrue*, 479 F. App'x 367, 370 (2d Cir. 2012) (summary order) (consultative examiner's findings that plaintiff was only mildly and moderately impaired by his depression and anxiety supported the ALJ's conclusions that he was capable of performing work that involved simple tasks and allowed for a low-stress environment).

In sum, the Court agrees with the ALJ's evaluation of Dr. Myers's opinion and his overall formulation of Claimant's RFC. *See Guerra*, 778 F. App'x at 77 ("Supported by ample treatment notes, physical examination findings, and [plaintiff's] testimony, the ALJ's assignment of less than controlling weight to [plaintiff's] treating physician's opinions was not in error."). While Plaintiff may disagree with the ALJ's conclusions, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 25 (2d Cir. 2018) (summary order) (internal citations and quotations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted). Plaintiff cites evidence that she believes supports her position that Claimant's limitations were more disabling than the ones identified in the RFC. However, the question before this Court "is not whether substantial evidence support plaintiff's position, but whether it supported the ALJ's

decision." *Anderson v. Colvin*, No. 1:14-CV-01038 (MAT), 2017 WL 2797913, at *3 (W.D.N.Y. June 28, 2017); *see also Cartagena v. Comm'r of Soc. Sec.*, No. 18-CV-245-FPG, 2019 WL 4750425, at *4 (W.D.N.Y. Sept. 30, 2019) ("[W]here substantial evidence supports the ALJ's decision, a court will not remand simply because the evidence also supports an alternate conclusion.").

Here, the record supports the ALJ's RFC determination and does not demonstrate that any limitations beyond those identified in the RFC were warranted. Because Plaintiff has presented no medical evidence of functional limitations greater than those found by the ALJ, Plaintiff has failed to meet her burden to demonstrate that Claimant had a more restrictive RFC than found by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (plaintiff failed his duty to prove a more restrictive RFC). For the reasons stated above, the Court finds that the RFC determination was supported by substantial evidence. Accordingly, there is no basis for remand or reversal.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 20) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 13) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

                                                 ELIZABETH A. WOLFORD
                                                 Chief Judge
                                                 United States District Court

Dated:       September 15, 2021
               Rochester, New York